UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MATEUSZ SASIADA,<br><br>　　　　　　　Plaintiff(s),<br><br>　v.<br><br>SWITCH, LTD.,<br><br>　　　　　　　Defendant(s). | Case No. 2:23-CV-88 JCM (NJK)<br><br>ORDER |

Presently before the court is defendant Switch, LTD.'s motion to compel arbitration and dismiss the complaint. (ECF No. 9, 10). Plaintiff Mateusz Sasiada filed a response (ECF No. 18), to which Switch, LTD. replied (ECF No. 19). For the reasons stated below, the court grants in part and denies in part Switch, LTD.'s motion.

**I.　Background**

This is an employment discrimination action brought under both federal and state law. Sasiada was an employee of Switch before he was terminated for not following Switch's company-wide COVID-19 vaccination policy. (ECF No. 1, at 3). Sasiada alleges that he was wrongfully denied a religious exemption to the policy. (*Id.*). Sasiada claims religious discrimination and retaliation under Title VII and Nevada Revised Statute § 613.330. (*See generally id.*).

Before beginning his employment, Sasiada signed a "Mutual Agreement to Arbitrate Claims" with Switch. (ECF No. 9-2). The agreement provides that—

> Switch and [Sasiada] mutually consent to the resolution by arbitration of all claims or controversies ("claims"), **past, present or future**, whether or not arising out of [Sasiada's] employment (or its termination)….**Arbitrable claims include, but are not limited to**…**claims for discrimination** (including, but not limited

>to, race, sex, sexual orientation, **religion**, national origin, age, marital status, military or veterans status, physical or mental disability or handicap, or medical condition), harassment or **retaliation**…and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance….

(*Id.*, at 2) (emphasis added).  The agreement's choice of law clause further stipulates that it shall be governed by the Federal Arbitration Act, and "[t]o the extent that the Federal Arbitration Act is inapplicable…the arbitration law of the state in which [Sasiada]…last worked for Switch shall apply." (*Id.*).  The agreement is three pages long and the text is in a consistent and standard typeface throughout, with bolded subheadings. (*See generally id.*).

After Sasiada initiated this action, Switch's counsel attempted to obtain a stipulation to arbitrate and sent Sasiada's counsel a copy of the agreement.  (*See generally* ECF No. 10-3). Switch informs the court that it filed the instant motion after Sasiada failed to agree to submit this action to arbitration.  (*Id.*).

## II.     Legal Standard

The Federal Arbitration Act ("FAA") provides for the enforcement of arbitration agreements in any contract involving interstate commerce.  9 U.S.C. §§ 1–2; *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." *Id.* § 2. (emphasis added).  The Act further dictates that a party to an arbitration agreement may invoke his or her rights under the Act by petitioning the district court "for an order directing that such arbitration proceed in the manner provided for" in the agreement. *Id.* § 4.

When addressing a motion to compel arbitration, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999)).  While federal law governs the determination of scope, state law governs the determination of an agreement's validity.  *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994); *see also Goldman, Sachs & Co. v. City of Reno*, 747

F.3d 733, 743 (9th Cir. 2014).  As such, state law governs contract defenses raised to invalidate an agreement to arbitrate.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 988 (9th Cir. 2007); *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002).

**III.   Discussion**

    A.   This action must be submitted to arbitration.

Because Sasiada does not dispute that this action is within the scope of the arbitration agreement, the court need only decide whether the arbitration agreement is valid. [1]  (*See generally* ECF No. 18).  Sasiada argues that he should not be compelled to arbitrate because the arbitration agreement is unconscionable.  (ECF No. 18, at 7–10).  Sasiada provides no evidence or controlling law to support his argument.

Unconscionability is a state law contract defense "that may be applied to invalidate arbitration agreements" without contravening the FAA.  *Shroyer*, 498 F.3d at 988 (citations omitted).  Nevada law governs here because Sasiada worked for Switch in Nevada, all parties are Nevadans, the alleged events occurred in Nevada, and the choice-of-law clause dictates that Nevada law apply.  (ECF No. 1, at 1–2).

"Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable."  *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018).  But a stronger showing under one type of unconscionability permits a weaker showing on the other.  *Gonski v. Second Jud. Dist. Ct. of State ex rel. Washoe*, 245 P.3d 1164, 1169 (Nev. 2010) (overruled on other grounds by *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32 (Nev. 2018)).  The court finds that the arbitration agreement is neither procedurally nor substantively unconscionable.

    *1.   The agreement is not procedurally unconscionable.*

An arbitration agreement is procedurally unconscionable "either because (1) the contract is an adhesion contract, or because (2) the terms are not readily ascertainable upon a review of the contract."  *CVSM, LLC v. Doe Dancer V*, 435 P.3d 659, 2019 WL 978679, at *2 (Nev. 2019)

---

[1] Any arguments to which no response is supplied may be deemed conceded as unopposed.  *See* LR 7-2(d).

1  (citations omitted) (unpublished table decision).  Procedural unconscionability is concerned, essentially, with unfair surprise—when the "manner" in which the disputed contract is presented and negotiated misrepresents the "nature or effect of the contract."  *FQ Men's Club, Inc. v. Doe Dancers I*, 471 P.3d 753, 2020 WL 5587435, at *2 (Nev. 2020) (unpublished table decision).

Sasiada argues that the arbitration agreement is procedurally unconscionable because he had no meaningful opportunity to negotiate its terms as it was a "take it or leave it" contract. (ECF No. 18, at 8).  He asserts—while providing no evidentiary support—that had he not signed the agreement, "he would not have been hired." (*Id.* at 7).  But this argument is unavailing under Nevada law.

An adhesion contract is "a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain."  *Obstetrics and Gynecologists v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985).  The Nevada Supreme Court has held that "the adhesion contract doctrine" does *not* apply to employment cases.  *Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 996 P.2d 903, 907 (Nev. 2000) (rejecting an employee's claim of procedural unconscionability in the employment context when the employee alleged, with no evidentiary support, that she would not have been hired had she not signed the arbitration agreement).

Sasiada alleges, in general and conclusory terms, that he was not allowed an opportunity to negotiate the terms of the agreement and that he was given no choice but to accept it.  But Sasiada provides no evidentiary support for these allegations and, in Nevada, a court cannot apply the adhesion contract doctrine to employment cases as a matter of law.  Furthermore, by his own admission, he did not sign the agreement until the day after he began employment. (ECF No. 18, at 8).  This indicates he was given time to review the agreement before signing.

Turning to whether the terms of the agreement were readily ascertainable, the court finds that they were.  Terms of a contract are not readily ascertainable if they are "presented or negotiated in a way that conceals the terms' meaning."  *CVSM, LLC*, 2019 WL 978679, at *2.  For example, terms are not readily ascertainable if they are in fine print or "buried in an endnote or exhibit."  *Id.* (citations omitted).

The terms of the agreement here could not be clearer. The agreement is titled, in bold and all caps, "Mutual Agreement to Arbitrate Claims." (ECF No. 9-2, at 2). The agreement is only three pages in length and is written in a standard typeface and font size. (*See generally, id.*). Subsections are divided by paragraph breaks with bolded subheadings conveying their content. (*Id.*). No terms are concealed in fine print or buried in endnotes. (*Id.*). This court cannot fairly find that Sasiada was surprised by the terms of the agreement.

*2.     The agreement is not substantively unconscionable.*

As the court has found that the agreement is not procedurally unconscionable, the arbitration agreement cannot be invalidated on unconscionability grounds because Nevada requires a finding of *both* procedural and substantive unconscionability. But the court will nevertheless address Sasiada's remaining arguments.

A contract is substantively unconscionable when it contains oppressive terms or is unduly one-sided. *Gonski*, 245 P.3d, at 1169. Sasiada argues that the agreement is one-sided because it compels arbitration of claims employees are likely to bring against Switch but exempts from arbitration claims Switch is likely to bring against its employees. (ECF No. 18, at 13). Sasiada also argues that, when he signed the agreement, he "could not have conceivably comprehended" that his request for a religious exemption would be denied because Switch did not yet have a vaccination policy. (ECF No. 18, at 8).

Sasiada's first argument is meritless because he mischaracterizes the terms of the arbitration agreement and the case to which he cites.[2] While the agreement exempts from arbitration claims for "workers' compensation or unemployment compensation benefits," it does *not* exempt "claims for wages, bonuses, or other compensation due; claims for breach…; tort claims;…and claims for violation of any federal, state, or other governmental law…." (ECF No. 9-2). Some of these claims are more likely to be brought by an employee than by Switch, and others are equally likely to be brought by both.

---

[2] The case Sasiada cites in support of his position is not only distinguishable because the arbitration agreement there contains completely different terms to the agreement here, but is inapplicable because it applies California caselaw. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778 (9th Cir. 2002) (applying California law on unconscionability).

- 5 -

Sasiada's second argument is similarly unpersuasive. He *appears* to argue that the agreement is unconscionable because it compels arbitration of claims arising under later-adopted company policies. But he fails to explain *how* this makes the agreement oppressive or one-sided.[3] A later-adopted policy could just as easily result in more claims being brought by Switch as the employees. The fact that Switch's vaccination policy did not exist when Sasiada entered into the arbitration agreement is irrelevant to whether the agreement is unconscionable, either substantively or procedurally.

The court finds that the agreement is not one-sided or oppressive. Far from it, the agreement requires Switch to cover the costs of arbitration (unless Sasiada is the party initiating the claim, in which case he is required to pay an equal share of the filing fee); provides both parties with an equal opportunity to arbitrate; and sets forth clearly the procedure for asserting claims. As the court has found no reason to invalidate the arbitration agreement, and the parties do not dispute that this action is within the scope of the agreement, Switch's motion to compel arbitration is GRANTED.

       3.      This action must be dismissed *without* prejudice.

Switch asks this court to dismiss this action with prejudice, or alternatively, to stay the action pending arbitration. (ECF No. 9, at 12). But a dismissal "with prejudice" constitutes an appealable, final judgment on the merits. *See Classic Auto Refinishing, Inc. v. Marino*, 181 F.3d 1142, 1144 (9th Cir. 1999) (The phrase "final judgment on the merits" is often used interchangeably with "dismissal with prejudice."); *Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1048 (9th Cir. 2001) ("a final decision is a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" (citations omitted)).

An order compelling arbitration is not a final decision on the merits of the action unless the action was brought "solely to compel specific performance of an agreement to arbitrate as it

---

[3] The court reminds Sasiada that it will not construct arguments for him. *Couturier v. Am. Invsco Corp.*, No. 2:12-cv-01104-APG-NJK, 2013 WL 4499008, at *3 (D. Nev. Aug. 20, 2013) ("A judge is the impartial umpire of legal battles, not a party's attorney. He is neither required to hunt down arguments the parties keep camouflaged, nor required to address perfunctory and undeveloped arguments.").

- 6 -

resolves the only issue before the district court." *Delta Computer Corp. v. Samsung Semiconductor & Telecommunications Co.*, 879 F.2d 662, 665 (9th Cir. 1989) (cleaned up) (citations omitted). Otherwise, a district court's order compelling arbitration is an unappealable, interlocutory order. *Id.*

This court is not, by compelling arbitration, rendering a decision on the merits of this case—employment discrimination. It is merely finding that this action is subject to arbitration. The court therefore dismisses this entire action *without* prejudice. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) ("a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration").

B.   Switch is entitled to attorney's fees.

In addition to asking this court to compel arbitration and dismiss this action, Switch argues it is entitled to attorney's fees due to Sasiada's "frivolous" and "bad faith" refusal to submit to arbitration. (ECF No. 9, at 11). Switch points to its attempts to avoid unnecessary motion practice by stipulating to arbitration with Sasiada, sending Sasiada's counsel a sample motion to compel arbitration in another case, and Sasiada's delay in responding and ultimate refusal to arbitrate. (ECF No. 9-2).

Under the American Rule, a prevailing party is not entitled to an award of attorney's fees absent a contract, statute, or rule authorizing such an award. *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). An exception exists when "a party frivolously or in bad faith refuses to submit a dispute to arbitration." *United Food & Com. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1383 (9th Cir. 1984). In *United Food*, the circuit court denied an award of attorney's fees because it found that although "a number" of the losing party's arguments against arbitration were frivolous, its principal argument was not. *Id.*

In *Petroleum & Industrial Workers*, the Ninth Circuit explained that when a party employs dilatory tactics, an award of attorney's fees is necessary to further the goals of "industrial stabilization." *Cf.* 707 F.2d at 428 (holding in the context of a party refusing to abide

by an arbitration award). Because "the threat of an award of attorneys' fees tends to deter frivolous dilatory tactics" and promotes the strong federal policy favoring arbitration, an award of attorney's fees is appropriate when the party opposing arbitration demonstrates "obstinacy" in denying the other party its clear legal right to arbitrate. *Cf. id.*

Looking to decisions within this circuit, one district court awarded attorney's fees when the losing party cited "virtually no legal authority for its positions," argued against a "long line" of binding authority, and "dragged out" the dispute by failing to timely respond to repeated requests for arbitration. *Gen. Teamsters Local No. 174 v. Nw. Infrastructure, Inc.*, No. C06-1122P, 2007 WL 185012, at *4 (W.D. Wash. Jan. 19, 2007). Another court awarded fees after finding that the party opposing arbitration ignored controlling caselaw and repeatedly refused arbitration requests. *Int'l Union of Painters Allied Trades Dist. Council Local, No. 15 v. Diversified Flooring Specialist, Inc.*, No. 2:06-cv-0358-RLH-PAL, 2007 WL 923936, at *6 (D. Nev. Mar. 23, 2007).

Here, the court finds that Sasiada engaged in frivolous and bad-faith conduct warranting an award of attorney's fees to Switch. *All* of Sasiada's arguments against the validity of the arbitration agreement are patently meritless. In his response opposing arbitration, Sasiada ignores clear, binding case law that Nevada does not apply the adhesion contract doctrine to employment cases. For reasons unknown, Sasiada cites—almost exclusively—cases applying California law in support of his unconscionability argument, rather than Nevada law. (ECF No. 7, at 6–7). The California cases he *does* cite are also clearly distinguishable. And, he resisted Switch's repeated attempts to stipulate to arbitration.

Under these circumstances, the court finds that Switch is entitled to an award of its reasonable attorney's fees incurred in this action. Switch is instructed to file, within 30 days of this order, a properly supported motion for attorney's fees setting forth its requested fee amount. The court reminds Switch that, under LR 54-14(a), it must include an itemized list of the categories of work performed by its attorneys, a reasonable description thereof, and the total associated fee amount for each category, with appropriate citations to the supporting exhibits. Sasiada may file an opposition to that motion within 14 days. The opposition must be compliant

with LR 54-14(d).

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Switch's motion to compel arbitration and dismiss this action (ECF Nos. 9, 10) be, and the same hereby is, GRANTED in part and DENIED in part.

Switch is ordered to file a motion for attorney's fees consistent with the foregoing.

The court orders this action dismissed **without** prejudice.

DATED February 5, 2024.

_____
UNITED STATES DISTRICT JUDGE